Kally C. MILLER, et al., Plaintiffs,

v.

**GRIFFIN–ALEXANDER DRILLING CO., Defendants,**

Richard B. Sanders, M.D., James R. Bozeman, M.D. and Walter B. Comeaux, Jr., M.D., Defendants–Appellees.

**GRIFFIN–ALEXANDER DRILLING CO., Third–Party Plaintiff,**

v.

**BETHLEHEM STEEL CORP., Third–Party Defendant–Appellant.**

**BETHLEHEM STEEL CORP., Plaintiff–Appellant,**

v.

Richard B. SANDERS, M.D., James R. Bozeman, M.D. and Walter B. Comeaux, Jr., Defendants–Appellees.

Nos. 88–4388, 88–4588.

United States Court of Appeals, Fifth Circuit.

May 25, 1989.

Robert S. Reich, Stephanie Chisholm Holdebrandt, Terriberry, Carroll & Yancey, New Orleans, La., for plaintiff-appellant.

L. Paul Foreman, Raggio, Cappel, Chozen & Berniard, Lake Charles, La., for Sanders.

Harmon F. Roy, Alan K. Breaud, Roy, Carmouche, Bivins, Judice, Henke & Breaud, Lafayette, La., for Bozeman.

Charles J. Boudreaux, Sr., Pugh & Boudreaux, Lafayette, La., for Comeaux.

Before GEE, SMITH and DUHE, Circuit Judges.

GEE, Circuit Judge:

## Facts

The plaintiff, Kally Miller, was employed by defendant Griffin–Alexander Drilling Company as a mud man aboard the drilling barge GA–III when he fell from a ladder and injured his leg. Two days later Dr. Sanders, one of the three medical defendants, examined and treated him on shore. Dr. Sanders allowed the plaintiff to return to the GA–III.

Several days later, Dr. Comeaux, the second medical defendant, referred the plaintiff to Dr. Bozeman, the third. The plaintiff did not return to work after examinations by these doctors. Later, Dr. Bozeman performed a series of operations which culminated in the amputation of the plaintiff's left leg below the knee.

Later still, the plaintiff filed suit against Griffin–Alexander and its insurer, National Union Fire Insurance Company. Griffin–Alexander and National Union in turn filed a third-party complaint against Bethlehem Steel, the manufacturer of the ladder, seeking contribution or indemnification. The plaintiff's amended complaint added the three doctors, Sanders, Bozeman and Comeaux, alleging medical malpractice.

Bethlehem Steel moved for leave to file a cross-claim against the three doctors, which was denied. The doctors' motion to dismiss the claim against them was granted on the ground that the plaintiff's cause of action was not cognizable in admiralty. The court also refused to exercise pendent-party jurisdiction. Five days before the trial, the parties settled the maritime claims, reserving their rights against the three doctors.

Bethlehem Steel then filed a complaint in federal court against the three doctors. The court dismissed the complaint for want of admiralty jurisdiction. The appellant in this case, Bethlehem Steel, appeals the district court's denial of its motion for leave to file a cross-claim and the subsequent dismissal of its federal suit against the three doctors.

## Analysis

### A. Admiralty Jurisdiction

The Admiralty Jurisdiction Extension Act, 46 U.S.C.App. § 740 states in relevant part:

The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land.

Before the Act, whether or not a case was cognizable in admiralty had depended exclusively on where the damage or injury took place.[1] If the event took place on navigable waters, admiralty jurisdiction would be found, otherwise not.[2] This locality test was revised by the Supreme Court in *Executive Jet Aviation v. Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). In that case a jet aircraft ingested a flock of seagulls on takeoff from a lakefront airport in Cleveland, crashing and sinking in Lake Erie. The plaintiff sought to invoke federal admiralty jurisdiction, but the Court held that *two* requirements must be met for such jurisdiction: first, the traditional locality test had to be met; second, the wrong had to have a "significant relationship to traditional maritime activity." *Id.* at 268, 93 S.Ct. at 504.

### 1. Locality

The legislative history of the Admiralty Extension Act demonstrates that its purpose was to correct such anomalies of the strict locality test as resulted when, for example, a ship struck a pier and injured

---

**1.** *See Victory Carriers, Inc. v. Law,* 404 U.S. 202, 205 n. 2, 92 S.Ct. 418, 421 n. 2, 30 L.Ed.2d 383 (1971), for citation to more than forty cases regarding the locality rule.

**2.** As Justice Story wrote in *Thomas v. Lane,* 23 F.Cas. 957 (No. 3,776) (CC Me 1813), "In regard to torts I have always understood, that the jurisdiction of the admiralty is exclusively dependent upon the locality of the act." *Id.* at 960 (cited in *Executive Jet Aviation v. Cleveland,* 409 U.S. 249, 254 n. 4, 93 S.Ct. 493, 497 n. 4, 34 L.Ed.2d 454 (1972)).

parties onboard could recover under admiralty while those injured on land could not. Admiralty Jurisdiction—Extension, S.Rep. No. 1593, 80th Cong.2d Sess., *reprinted in* 1948 U.S.Code Cong. Service, 1898, 1899. The purpose of the Act was not to create new causes of action. As the Senate Report states:

> Adoption of the bill will not create new causes of action. It merely specifically directs the courts to exercise the admiralty and maritime jurisdictions of the United States already conferred by article III, section 2 of the Constitution and already authorized by the Judiciary acts. Moreover there will still remain available the right to a common-law remedy which the Judiciary Acts (28 U.S.Code 41(3)) have expressly saved to claimants.

*Id.* at 1900.

The appellant maintains that our decision in *Parker v. Gulf City Fisheries, Inc.,* 803 F.2d 828 (5th Cir.1986) requires us to find admiralty jurisdiction in this case. We disagree. In *Parker,* a ship captain aboard a vessel had telephoned his wife on shore, who noticed that he stuttered and appeared confused and forgetful. His wife spoke twice with a landside private physician about her husband's symptoms and informed his employer of them. *Id.* at 828–29. Later, after examination by the landside physician, the captain suffered a massive stroke. He sued his employer, claiming a failure to provide him adequate medical attention; and the employer complained against the private physician as a third party, asserting that his malpractice caused or aggravated the stroke. After the original parties settled, the court dismissed the third party action for want of admiralty jurisdiction. On appeal, we found admiralty jurisdiction because the physician failed to provide adequate treatment when the captain's wife sought medical advice on his behalf; holding that "admiralty jurisdiction exists at least for the part of the negligence whose impact occurred at sea." *Id.* We also noted that

> [I]njuries to workers aboard ship fall within the admiralty jurisdiction even though similar injuries to their counterparts on shore do not. Dr. Blanks knew he was treating a seaman aboard ship. That suffices.

*Id.* at 830.

*Parker* presents a unique fact pattern in which "treatment" (or a want of it) took place onboard a ship through an intermediary, just as though the seaman had inquired directly of the landside physician from shipboard. The medical advice was dispensed to him in an admiralty situs; and he had no opportunity to seek treatment on land, continuing to work on shipboard after the doctor had provided the advice. The dangers to commerce of causing illness to a sea captain on voyage are readily apparent. See *Kelly v. Smith,* 485 F.2d 520 (5th Cir. 1973) (danger to commerce of rifle fire directed at vessel on navigable waters).

The concerns that prompted us to find admiralty jurisdiction in *Parker* and in *Kelly,* two fact situations at the extreme edges of that jurisdiction, are not present in this case. Today's plaintiff was a mud man, not the captain of the ship. His treatment did not take place during the course of a sea voyage, nor did the same dangers to commerce exist. The plaintiff was not treated in an admiralty situs as in *Parker;* and he never in fact returned to work, although he was aboard the drilling barge for a brief time after treatment. The plaintiff's physician, unlike the physician in *Parker,* was not knowingly treating a sea captain and on notice of the maritime context of the medical advice.[3] Finally, today's plaintiff had other options for medical treatment.

We do not imply that admiralty jurisdiction may not lie without the presence of each of these items. In fact, as we have noted, the *Parker* facts are most unusual. No single fact is dispositive in determining jurisdiction. The facts of this case do not lead us to conclude that this plaintiff meets the first prong of the *Executive Jet* test.

---

**3.** As we noted in *Parker,* the physician-defendant "knew that Parker was a ship's captain" and "that Parker was at sea when he gave the medical advice." 803 F.2d, at 830.

Nor does prior case law suggest finding a maritime location. In *Watz v. Zapata Off-Shore Company*, 431 F.2d 100 (5th Cir.1970), we found that a district court had jurisdiction over the claim of an employee injured when a hoist gave way while he was repairing a vessel on navigable waters. *Id.* at 111. In another products liability case, admiralty jurisdiction was found when a shrimp boat sank in navigable water, even though the negligent design may have occurred on shore. *Jig The Third Corp. v. Puritan Marine Insurance Underwriters Corp.*, 519 F.2d 171, 174 (5th Cir.1975). *See also Sperry Rand Corp. v. Radio Corp. of America*, 618 F.2d 319, 321 (5th Cir.1980); *Moser v. Texas Trailer Corp.*, 623 F.2d 1006, 1013 (5th Cir.1980). By contrast, the plaintiff in today's case seeks to bootstrap his claim into federal court by arguing that his condition merely worsened onboard the ship. The flaw in the argument, however, is that the alleged medical malpractice did not take place on navigable waters as it did in *Parker, Watz* and *Jig the Third.*

The stated purpose of the Act was to correct inequities and not to create new causes of action. If the doctors committed medical malpractice, there is a common-law remedy in state court. We see no reason for expanding admiralty jurisdiction to cases with such scant involvement of maritime locations. Considering prior case law and the legislative history in light of the facts of this case, we agree with the trial court that a maritime locality is lacking.

### 2. *Traditional Maritime Activity*

Even were we mistaken regarding the plaintiff's failure to satisfy the first prong of the *Executive Jet* requirements for finding admiralty jurisdiction, it is plain that he also fails to meet the second prong. To meet *Executive Jet's* second requirement for admiralty jurisdiction the wrong must have a "significant relationship to traditional maritime activity." *Executive Jet, supra*, 409 U.S. at 268, 93 S.Ct. at 504.

We have developed factors to aid in determining whether a wrong bears a sufficient relationship to traditional maritime activity. The factors we consider were first set out in *Kelly v. Smith*, 485 F.2d 520 (5th Cir.1973):

1) the functions and roles of the parties;
2) the types of vehicles and instrumentalities involved;
3) the causation and the type of injury;
4) and traditional concepts of the role of admiralty law.

*Id.* at 525.

This is not a mechanical test, but an aid in determining whether a wrong may reasonably be regarded as having a significant relationship to maritime activities. In respect to the first factor—the functions and roles of the parties—the plaintiff was a mud man and the defendants were landside physicians. Unlike the plaintiffs in both *Kelly* and *Parker*, who were the captain and the pilot of their vessels respectively, today's plaintiff had no responsibility for navigating a vessel. Nor is there anything maritime about the defendants, physicians who practiced medicine and treated the plaintiff on shore.[4]

The second factor considers the types of vehicles and instrumentalities involved. The only vehicle involved was a vessel, which is of course sufficiently maritime, but the vessel has no relationship to the plaintiff's cause of action in this appeal. On appeal is the dismissal of a suit against the doctors, and on that issue there is no vehicle to consider. The instrumentality, if any, would perhaps be any surgical equipment used to treat the plaintiff. We find nothing distinctively maritime about equipment used by a physician to treat a patient.

The third factor looks to the causation and the type of injury. The causation was allegedly medical malpractice, which bears no special relationship to maritime activities. The plaintiff's injury is two-fold: the fall from the ladder and the alleged medical malpractice. While the fall from the ladder

---

**4.** *Compare Sohyde Drill & Marine v. Coastal States Gas Producing Co.*, 644 F.2d 1132, 1136 (5th Cir.1981) (the functions and roles of the parties were not "substantially salty").

is certainly a maritime injury,[5] the appellants are not complaining of that injury, but rather of the alleged medical malpractice. Thus, medical malpractice is the fault that we must consider in evaluating the connection to maritime injury. We conclude that medical malpractice on these facts bears no relationship at all to maritime injuries. These facts do not resemble the *Moser* case, in which an employee was injured on a vessel by a maritime instrumentality while performing a maritime activity.[6]

In addition, we note that in *Sohyde* we found a well blowout in a navigable canal could just as easily have occurred on land,[7] and in *Woessner* that the plaintiff's injuries were no different from those affecting land-based workers.[8] Even injuries occurring in a maritime setting require some maritime connection. In the instant case, the alleged malpractice neither occurred in a maritime setting nor fairly constituted a maritime related injury. We find arguments for admiralty jurisdiction unpersuasive on this issue.

Finally, we consider the traditional concepts of the role of admiralty law. As we stated in *Kelly*, "The admiralty jurisdiction of federal courts stems from the important national interest in uniformity of law and remedies for those facing the hazards of waterborne navigation." *Kelly, supra,* at 526. *See also Foremost Insurance Co.,* 457 U.S. 668, 676, 102 S.Ct. 2654, 2659, 73 L.Ed.2d 300 (1982). The appellants have failed to persuade us that the national interest would be served by applying admi-

ralty jurisdiction to a malpractice claim against land based doctors who dispensed medical treatment to an onshore mud man, far removed from the hazards of waterborne navigation. We are in fact convinced that finding admiralty jurisdiction for medical malpractice suits with no more relationship to maritime activities and dangers than is presented here would clearly violate principles of federalism and advance no federal interest.[9]

The appellant also argues that the district court erred in applying the principles set out in *Molett v. Penrod Drilling Co.,* 826 F.2d 1419 (5th Cir.1987), without also reviewing the test in *Kelly*. We disagree. In *Molett* we made the following observation:

> The Court's decisions in *Executive Jet* and *Foremost* suggest that indicia of maritime flavor can be found in (1) the impact of the event on maritime shipping and commerce (2) the desirability of a uniform national rule to apply to such matters and (3) the need for admiralty "expertise" in the trial and decision of the case.

*Id.* at 1426. The three indicia listed above were "divined from *Executive Jet* and *Foremost." Id.* We find no fault in the district court for following our own interpretation of the Supreme Court's decisions. As we have stated, the factors used to evaluate the maritime flavor of a case are not mechanical and unbending.

The *Molett* test may bring a court to precisely the same result as the *Kelly* test.

---

5. *See, e.g., Moser v. Texas Trailer Corp.,* 623 F.2d 1006 (5th Cir.1980). In *Moser,* the plaintiff fell from the second floor of a housing module to the deck of a barge. *Id.* at 1007. We had no difficulty categorizing this injury as maritime related. *Id.* at 1009.

6. *Moser,* 623 F.2d at 1009.

7. *Sohyde,* 644 F.2d at 1137.

8. *Woessner v. Johns–Manville Sales Corp.,* 757 F.2d 634, 647 (5th Cir.1985).

9. Federalism, the balance of relationships between the federal and state governments which stems from the Tenth Amendment, has experienced a recent revival, especially under state

constitutional law. *See generally* Slobogin, State Adoption of Federal Law: Exploring the limits of Florida's "Forced Linkage" Amendment, 39 U.Fla.Rev. 653 (1987); State Constitutions Realigning Federalism: A Special Look At Florida, 39 U.Fla.L.Rev. 733 (1987); Linde, E Pluribus—Constitutional Theory and State Courts, 18 Ga.L.Rev. 165, 176 (1984); Developments in the Law: The Interpretation of State Constitutional Rights, 95 Harv.L.Rev. 1324 (1982); Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv.L.Rev. 489 (1977). Taking federal jurisdiction of the instant medical malpractice suit, an area traditionally controlled by state law, would disturb the balance of federalism and extend the reach of admiralty law many leagues beyond its intended borders.

Indeed, we discern little difference between the two tests. The first *Molett* factor, the impact on maritime shipping, requires a court to consider the *Kelly* factors of the functions of the parties and the types of vehicles and instrumentalities involved. A court cannot determine whether a tort claim is maritime without considering where and how it originated and to whom the injury occurred. The second *Molett* factor, the desirability of a uniform national rule, is no different from the *Kelly* factor examining the traditional role of admiralty law. The last *Molett* factor, the need for admiralty expertise, requires a court to consider the type of injury and its cause. There is no conflict.

### B. *Pendent–Party Jurisdiction*

 The appellant's final argument is that the district court erred in refusing to exercise pendent-party jurisdiction over the medical claims. We review such a district court ruling under an abuse of discretion standard. *See Feigler v. Tidex, Inc.,* 826 F.2d 1435, 1439 (5th Cir.1987). Although a court has discretion to exercise jurisdiction over state law claims derived from a common nucleus of operative fact,[10] we do not find the district court abused its discretion. The doctors were impleaded two and one-half years after the filing of the admiralty claims, and the court noted that Louisiana has a comprehensive medical malpractice act under which the action against them may still be filed, even today. The district court's discretion is especially broad when the underlying federal claim is dismissed for lack of jurisdiction, and the district court here acted well within its sound discretion.

### C. *Conclusion*

The district court's denial of the appellant's motion for leave to file a cross-claim and the subsequent dismissal of his federal suit against the three doctors are in all respects

AFFIRMED.

10. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).