**Mildred ANTOINE, Individually and as Representative of the Estate of Vernon Antoine, Deceased,**

v.

**ZAPATA HAYNIE CORPORATION, Defendant–Third Party Plaintiff,**

v.

**LOWER CAMERON HOSPITAL SERVICE DISTRICT, et al., Defendants– Third Party Defendants.**

No. 1: 90 CV 605.

United States District Court, E.D. Texas, Beaumont Division.

Nov. 19, 1991.

Bob K. Monk, David Arthur Brandom, Umphrey Eddins & Carver, Beaumont, Tex., for plaintiff.

James Mayer Harris, Jr., Holmes & Harris, Beaumont, Tex., for Zapata Haynie Corp.

James Shelton, Pugh & Boudreaux, Lafayette, La., for South Cameron Memorial Hosp., Ambulance Service and attendants, and John Zamora and Florence Benoit.

Michael L. Baker, Strong Pipkin Nelson & Bissell, Beaumont, Tex., for Richard Sanders.

Dana L. Timaeus, Benckenstein Oxford & Johnson, Beaumont, Tex., for South Cameron Memorial Hosp., Ambulance Service and attendants.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS

SCHELL, District Judge.

Came on to be considered the "Joint Motion to Reconsider Memorandum Opinion And Order Granting Defendants' Motion to Dismiss" filed by the plaintiff, Mildred Antoine, and defendant, Zapata Haynie Corpo-

ration on October 4, 1991. All parties appeared through counsel on November 12, 1991, and the court heard oral arguments on this motion to reconsider.

On September 25, 1991, this court dismissed Antoine's claims and Zapata's third-party claims of medical malpractice against the defendants/third-party defendants Lower Cameron Hospital Service District, Lower Cameron Ambulance Service District, John Zamora, Florence Benoit and Dr. Richard Sanders. The court found that the medical malpractice claims against these medical care defendants did not involve a "maritime locality." Accordingly, under the two-part test set forth in *Executive Jet Aviation v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), this court lacked federal admiralty and maritime jurisdiction, but retained diversity jurisdiction. Sitting in diversity, this court applied Texas choice-of-law rules and determined that Louisiana law should govern the resolution of the medical malpractice claims in this lawsuit. Pursuant to the application of the Louisiana Medical Malpractice Act, the court determined that the proper course of action was to grant the motion to dismiss the malpractice claims without prejudice for failure of Antoine and Zapata to exhaust Louisiana administrative remedies in medical negligence cases.

Antoine and Zapata then filed this joint motion for reconsideration, followed by separate notices of appeal filed October 25, 1991. Both Antoine and Zapata chose to appeal the September 25th order before receiving this court's ruling on this joint motion to reconsider.

## 1. MARITIME LOCALITY

In their joint motion to reconsider, Antoine and Zapata call the court's attention to facts which establish that at least some medical care was given to the deceased while he was still onboard the vessel. Consequently, Antoine and Zapata maintain that the "maritime locality" part of the *Executive Jet* test is met and that, therefore, the Jones Act governs their medical malpractice claims rather than Louisiana law.

Zapata states that it pointed out to this court in its "original response" to the motion to dismiss that the ambulance attendants had "boarded" the vessel and treated Vernon Antoine, the deceased seaman. The court has reviewed Zapata's July 26, 1991 response and finds that it contains no reference to boarding the vessel or to the exact situs of any medical care. Likewise, Zapata's Third Party Complaint alleges that the ambulance met the vessel at the dock, but does not state where the treatment occurred. By submitting all pertinent facts and law to the court prior to its ruling, counsel can save the court from the necessity to revisit already decided motions. Nevertheless, since counsel for the medical care defendants has now stipulated in his October 15, 1991 response that the ambulance attendants, John Zamora and Florence Benoit, did board the vessel to render treatment to the deceased, the court was obviously incorrect in assuming that this treatment was given on the dock.

In addition to clarifying the location of the medical treatment given by the ambulance service and its attendants, Zapata and Antoine have submitted affidavits from two Zapata employees. The Zapata employees, LeBlanc and Schwark, state that the hospital and its emergency room physician, Dr. Sanders, were consulted for medical advice while the vessel was still at sea and this advice was radioed to the captain of the vessel. While affiant LeBlanc does not say what information he relayed from the hospital personnel, Schwark states in his affidavit that he talked to Dr. Sanders about the injured seaman, Vernon Antoine. According to Schwark, Sanders advised Zapata to give Antoine some juice and keep him awake until the vessel reached the dock. This advice was relayed to the captain of the vessel.

Based upon these affidavits, the court concludes that part of Dr. Sanders'

treatment or medical care took place onboard the vessel through an intermediary while the vessel was en route to the Zapata dock in Louisiana. *See Parker v. Gulf City Fisheries, Inc.,* 803 F.2d 828 (5th Cir. 1986). Since the medical malpractice alleged by Antoine and Zapata apparently took place, at least in part, while the deceased was still aboard the vessel, the "maritime locality" requirement of the *Executive Jet* test for admiralty subject matter jurisdiction is met for all the medical care defendants.

## 2. MARITIME NEXUS

■ Having determined that the first part of the *Executive Jet* test is satisfied, the court will now proceed to analyze the second part. In order to meet the second part of the test, the alleged wrong, medical malpractice here, must have had a "significant relationship to traditional maritime activity." *Executive Jet* at 93 S.Ct. 504. There are four factors that guide this nexus analysis:

1. the functions and roles of the parties;
2. the types of vehicles and instrumentalities involved;
3. the causation and the type of injury;
4. and traditional concepts of the role of admiralty law.

*See Miller v. Griffin–Alexander Drilling Co.,* 873 F.2d 809, 812 (5th Cir.1989).

■ With regard to the first factor, the functions and roles of the parties, the deceased was the pilot of the vessel, with responsibility for navigating the vessel. The ambulance attendants went onboard the vessel while it was docked in order to remove Mr. Antoine. According to the affidavits submitted to the court, the attendants attached a cervical collar around Mr. Antoine's neck and placed him on a spine board on his back while he was still onboard the vessel. The plaintiff contends that Mr. Antoine had suffered a broken jaw in a fall onboard the ship and that these actions by the ambulance attendants were negligent and caused his death by suffoca-

tion. Regarding Dr. Sanders, he allegedly gave advice to Zapata shore-based employees when called about Mr. Antoine. This occurred while the vessel was en route to the dock.

In the abstract, there is nothing particularly maritime about these land-based medical care defendants. Their primary function and role is to transport injured persons to the hospital and treat them there. In this instance, however, the place of the alleged malpractice was on a vessel in navigable waters.

The second factor involves the types of the vehicles and instrumentalities involved. The vessel itself is, of course, a vehicle, but it has no relationship to the medical negligence claim. *See Miller* at 812. The only instrumentalities would perhaps be the surgical collar and the spine board used by the ambulance attendants. There is nothing maritime about those items.

The third factor concerns the causation and the type of injury. "The causation was allegedly medical malpractice, which bears no special relationship to maritime activities." *Miller* at 812. Mr. Antoine's earlier fall onboard the vessel is not the injury around which the malpractice claim centered, but rather any injury caused by subsequent medical negligence. "Even injuries occurring in a maritime setting require some maritime connection." *Miller* at 813.

Finally, the fourth factor calls for a consideration of the traditional concepts of the role of admiralty law. "The admiralty jurisdiction of federal courts stems from the important national interest in uniformity of law and remedies for those facing the hazards of waterborne navigation." *Kelly v. Smith,* 485 F.2d 520, 526 (5th Cir.1973); *Miller* at 813. Unlike the *Miller* case, where the medical treatment was rendered entirely on land, here the medical treatment took place onboard the ship by the ambulance attendants directly and by Dr. Sanders through an intermediary. This case is similar to the *Parker* case wherein the Court of Appeals found that the fourth

nexus factor was satisfied by the fact that the doctor *knew* he was treating a seaman who was aboard ship, even though the treatment occurred through an intermediary. *Parker* at 830.

From this analysis, the court concludes that *Kelly* factors one and four suggest that the medical malpractice claims are cognizable under the court's admiralty and maritime jurisdiction, while factors two and three suggest the absence of a maritime nexus. This impasse is broken, however, when the test set forth by the Supreme Court in *Sisson v. Ruby,* —— U.S. ——, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990) is applied here.

In *Sisson,* the Supreme Court acknowledged the four-factor test for determining maritime nexus adopted by the Fifth Circuit in *Kelly.* The Court declined the invitation to itself adopt the *Kelly* test and instead relied upon and refined its own formula from *Executive Jet* and *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). See *Sisson* 110 S.Ct. at 2897–98 n. 4. The Supreme Court repeated a passage from its opinion in *Foremost* wherein the Court stated that when a "... potential hazard to maritime commerce arises out of activity that bears a substantial relationship to traditional maritime activity, ..., admiralty jurisdiction is appropriate." *Sisson,* 110 S.Ct. at 2895–96. The court in *Sisson* then broke down the test enunciated in this quoted passage into two parts.

The first part of the test concerns whether the type of incident involved is likely to disrupt maritime commercial activity. Here, medical negligence in the treatment of a pilot on a vessel in navigable waters satisfies the requirement of potential disruption to maritime commerce. An ill or incapacitated pilot aboard a vessel poses a risk to and the likely disruption of maritime commerce.

The second half of the Supreme Court's test requires a showing by the party seeking to invoke maritime jurisdiction that there is a substantial relationship between the activity giving rise to the incident and traditional maritime activity. The Court further explains that "... the relevant 'activity' is defined ... by the general conduct from which the incident arose." *Sisson* at 2897. The relevant activity here is onboard medical care of vessel crew members. The onboard health care and medical treatment of a vessel's crew, including the pilot, is an activity traditionally undertaken by vessels.

For these reasons, this court concludes that it has maritime subject matter jurisdiction over the medical malpractice claims alleged in this lawsuit. The court, therefore, withdraws its opinion and order of September 25, 1991, and hereby ORDERS that the motion to dismiss of defendants Lower Cameron Hospital Service District, Lower Cameron Ambulance Service District, John Zamora and Florence Benoit, joined in by defendant Richard Sanders is hereby DENIED.

It is further ORDERED that the defendants/third-party defendants' motion to transfer venue is DENIED.

It is further ORDERED that, in the interest of uniform rules of maritime conduct and liability, *Sisson* at 2898, the defendants/third-party defendants' Motion to Declare Louisiana Law as the Rule of Decision is DENIED.