Donald ALHOLM, Plaintiff,

v.

AMERICAN STEAMSHIP CO., The Duluth Clinic, Ltd, a Minnesota Corporation, Robert Francis Donley, M.D., Jointly and Severally, Defendant.

Civ. No. 5–94–19.

United States District Court,
D. Minnesota,
Fifth Division.

Jan. 5, 1996.

Gary W. Baun, John S. Hone, O'Bryan & Baun, Birmingham, MI, Craig A. Merrill, Merrill Law Office, Mpls., MN, for Donald Alholm.

Gaylord W. Swelbar, Hanft Fride O'Brien Harries Swelbar & Burns, Duluth, MN, Thomas W. Emery, Peter B. Worden, Jr., Garan Lucow Miller Seward Cooper & Beck-er, Detroit, MI, for American Steamship Company.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Plaintiff's Motion for leave to amend his Complaint or, should the Court deny the Motion to Amend, then certain of the parties seek a Voluntary Dismissal of this action, as contemplated by Rule 41(a)(1)(ii), Federal Rules of Civil Procedure.[1]

■ A Hearing on the Motion was conducted on January 4, 1996, at which time the Plaintiff appeared by Gary W. Baun, Esq.; no appearance was made by the Defendant American Steamship Company ("American Steamship");[2] and the Defendants Duluth Clinic, Ltd., and Robert Francis Donley, M.D. ("the Medical Defendants"), appeared by Eric D. Hylden, Esq.[3]

1. Originally, the Plaintiff had coupled his Motion to Amend with a Motion for Reconsideration of the Order of the District Court, the Honorable James R. Rosenbaum presiding, which entered Summary Judgment in favor of the Defendants Duluth Clinic, Ltd., and Robert Francis Donley, M.D. ("the Medical Defendants"). By Order dated November 22, 1995, the District Court denied the Motion to Reconsider.

2. Counsel for the Plaintiff has advised that American Steamship's counsel had a conflicting trial engagement and, in lieu of an appearance, he would be relying upon his written consent to the Plaintiff's Motion for leave to amend.

3. In his most recent filing with the Court, and *during the course of the Hearing, the Plaintiff* has objected to any appearance by the Medical Defendants, on the ground that Judgment has been entered, by the Clerk of Court, which has rejected his claim against each of these Defendants. The Record reveals, however, that the Plaintiff has served his Motion papers upon the Medical Defendants and, more importantly, we think that service was required. Based upon a thorough review of the Record, we have substantial doubt that the District Court issued a final, appealable Judgment, upon *its grant of the Medi-cal Defendants' Motion for Summary Judgment,* as is authorized by Rule 54(b), Federal Rules of Civil Procedure.

Of course, "Rule 54(b) permits the district court to 'direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay.'" *Interstate Power v. Kansas City Power*, 992 F.2d 804, 806 (8th Cir.1993). In determining whether a Rule 54(b) certification has been entered by a District Court, the Court of Appeals has taken the view that such "certifications must, either in express words or by unmistakably clear implication, contain the finding specially required by the rule." *Bullock v. Baptist Memorial Hospital*, 817 F.2d 58, 59 (8th Cir.1987). In this same respect, the Court of Appeals has made clear that "[a] Rule 54(b) determination should not be made routinely; it is only the 'special case' that warrants an immediate appeal from a partial resolution of the lawsuit." *Interstate Power v. Kansas City Power*, supra at 807, citing *Hardie v. Cotter & Co.*, 819 F.2d 181, 182 (8th Cir.1987). Indeed, the mere incantation, that there is "no just reason for delay," is insufficient to qualify an interlocutory Order as having Rule 54(b) finality. *Burlington Northern R. Co. v. Bair*, 754 F.2d 799, 800 (8th Cir.1985). As a consequence, given these pre-

For reasons which follow, the Motion to Amend is denied.

## II. *Discussion*

■ The checkered history, of the Plaintiff's prosecution of his claim, continues to writhe in procedural misreckoning. Having had his professional malpractice claims against the Medical Defendants summarily rejected as time-barred, the Plaintiff now seeks to join two additional parties, to rejoin the Medical Defendants under a strained interpretation of maritime law, and to reassert professional malpractice claims under the laws of the State of Minnesota. Notwithstanding the fact that the time for joining additional parties and claims has long ago expired, the Plaintiff offers no explanation for this belated attempt to resuscitate his professional malpractice claims, under one guise or another. Given the totality of the

cepts, we are unable to conclude that, in employing the directive to "LET JUDGMENT BE ENTERED ACCORDINGLY"—without more—the District Court's Order either expressly or unmistakably determined "that there [was] no just reason for delay" in the entry of a final Judgment.

Of course, "[i]n the absence of such [a] determination * * *, any order * * *, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties * * *." *Rule 54(b), Federal Rules of Civil Procedure.* More importantly, in the absence of such a determination, an "order * * * is subject to revision at any time before the entry of judgment adjudicating all the claims * * * of all the parties," *id.*, and the Court of Appeals treats such Orders as non-appealable, interlocutory determinations. *Burlington Northern R. Co. v. Bair,* supra at 800. Necessarily, therefore, in the absence of an express Rule 54(b) determination, the Medical Defendants remain parties to this litigation and have standing to address the Plaintiff's Motion for leave to amend his Complaint.

In any event, even if we have erred, in our reading of Rule 54(b) and in its application to the District Court's Summary Judgment Order, we see no prejudice in having allowed the Medical Defendants to state their position on the issues pending before us.

4. · Although the Plaintiff has not pressed the point, he has filed a Stipulation, that has been signed by his own counsel and by counsel for American Steamship, and that would allow the amendment which he presently seeks. Notwithstanding his silence on the subject, there is authority that the language of Rule 15(a) relieves the Court of any discretion to disallow an amendment to which the parties' have consented by stipulation. See, *6 Charles Alan Wright, Ar-*

Record before us, we find no competent showing that the interests of justice will be served by the amendments that the Plaintiff proposes and, indeed, we conclude that the granting of the Motion to Amend would manifest substantial prejudice and judicial inefficiencies.

■ The parties have argued the pending Motion solely in the context of Rule 15(a), Federal Rules of Civil Procedure, which encourages the free allowance of amended pleadings "when justice so requires." Where, as here, the time for both the amendment of pleadings and for the completion of discovery has expired, we conclude that the issue is most properly considered within the framework of Rule 16(b), Federal Rules of Civil Procedure.[4] Here, the Plaintiff offers no explanation for the substantial delay in his

*thur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1490* at page 700 (Where supported by the parties' stipulation, "[t]he pleader's right to amend is not subject to the court's discretion and the court must permit the amendment to be filed."), citing *Fern v. United States,* 213 F.2d 674 (9th Cir.1954). As we have noted, however, under our considered view of the circumstances, the Medical Defendants continue to be nominal parties to this action, since a Rule 54(b) determination has not been expressly rendered by the District Court. As such, the Medical Defendants would have to concur in the Plaintiff's Motion to Amend if the requisites of Rule 15(a) were to be properly satisfied, and the Medical Defendants have made clear their opposition to the Motion.

Even if a Rule 54(b) determination had been expressly made, we seriously doubt that such a dated reading of Rule 15(a) can be rationally harmonized with the recent amendments to Rule 16, and with the pressing obligations of the Court to observe the command of Rule 1, Federal Rules of Civil Procedure, that all of the Rules of Procedure "be construed and administered to secure the just, speedy, and inexpensive determination of every action." Rather, we think that a more enlightened interpretation, of the current state of the law, is expressed by the Court's reasoning in *Fort Howard Paper Co. v. Standard Havens, Inc.,* 901 F.2d 1373, 1379 (7th Cir.1990), where the Court concluded that, through its inherent powers, the Court can properly exercise its discretion to deny an amendment for reasons of delay and prejudice, notwithstanding the written consent of the adverse party. In our view, if the Court may not, independently, review the propriety and the timing of such an amendment, the Court's role in managing its docket cannot rise above that of a noisome kibitzer.

effort to further amend his Complaint, or for his failure to take advantage of the three prior occasions when he was granted extensions in which his Complaint could be amended.[5] Despite the fact that his claim has been pending since September of 1993, and that all discovery was required to be completed by no later than September 1, 1995, the Plaintiff now seeks to commence his action anew.

 On repeated occasion, under closely analogous circumstances, our Court of Appeals has refused to allow the belated initiation of amended pleadings. See, e.g., *Kinkead v. Southwestern Bell Telephone Company*, 49 F.3d 454, 457 (8th Cir.1995) (Plaintiff waited nearly two years after filing Complaint to seek amendment adding new claims and an additional party); *Williams v. Little Rock Municipal Water Works*, 21 F.3d 218, 224–25 (8th Cir.1994) (Plaintiff waited fourteen months after filing of original Complaint before seeking to amend); *Perkins v. Spivey*, 911 F.2d 22, 34–35 (8th Cir.1990), cert. denied, 499 U.S. 920, 111 S.Ct. 1309, 113 L.Ed.2d 243 (1991) (Plaintiff waited eighteen months before deciding to amend, and after extensive discovery had been conducted); *Thompson–El v. Jones*, 876 F.2d 66, 67–68 (8th Cir.1989) (Plaintiff did not seek to amend until eighteen months after Complaint filed and after the close of discovery); *Mills v. Des Arc Convalescent Home*, 872 F.2d 823, 826 (8th Cir.1989) (Request to amend denied where Plaintiff, without justification, consistently missing filing deadlines). Although these cases were decided under the rubric of Rule 15(a), we do not believe that a different result is counseled by Rule 16(b).[6]

First, we have no reason to believe, and the Plaintiff offers none, that a professional malpractice action against the doctors, who he now seeks to join as Defendants, would be any less dismissible than those which the Court has already found to have been time-barred. Moreover, we find the Plaintiff's assertion unconvincing, that the procedural requisites of Minnesota Statutes Section 145.682, Subdivision 2(1), need not be satisfied until such time as the Summons and Complaint are served. Given the chronically dilatory conduct of this Plaintiff, and in view of the purposes to be served by the Statute at issue, we conclude that the Plaintiff must make some preliminary showing, apart from his conclusory declaration that malpractice has occurred, when he seeks leave to amend his pleading so as commence a claim that squarely falls within the purview of that Statute. A rebuttal to the asserted futility of such an amendment would require no less.

Nor do we find any reason to conclude that the Plaintiff's intended maritime claims against the original Medical Defendants, or against those he now seeks to join, can successfully pass the test of futility. While the Plaintiff relies on *Parker By and Through Parker v. Gulf City Fisheries*, 803 F.2d 828, 829 (5th Cir.1986), for the proposition that a medical doctor can commit a maritime tort, the facts of that case are readily distinguishable from those presented here, as is underscored by the same Court's subsequent decision in *Miller v. Griffin–Alexander Drilling Co.*, 873 F.2d 809 (5th Cir.1989). In *Miller*, the Court described *Parker* as involving a "unique fact pattern," and it distinguished the case on the basis that, in *Miller*—as here—the medical treatment did not occur on a sea voyage, and the physician did not know that he was treating a sea captain who was then on maritime duty. *Id.* at 811. Our research discloses that the applicable, general rule is well-stated, in *Joiner v. Diamond M.*

---

**5.** On January 24, 1994, the District Court for the Eastern District of Michigan, where this action was initially commenced, granted the Plaintiff's request for leave to amend his Complaint so as to assert a negligence claim against St. Luke's Hospital and against the Duluth Clinic. Thereafter, on December 7, 1994—after the expiration of the deadline to amend his pleading that was established by this Court—the Plaintiff and American Steamship successfully secured a further Order from the District Court in Michigan, which purported to authorize a further amendment of the Plaintiff's Complaint so as to join Robert Francis Donley as a party-Defendant. After that joinder was accomplished, we extended the period, in which the parties could amend their pleadings, by our Memorandum Order of January 4, 1995. Although the Plaintiff *did* seek to obtain a further extension of the discovery deadline, he *did not* seek leave to further amend his Complaint until the filing of his present Motion.

Of course, at no time has the Plaintiff explained his refusal to commence his action against the Medical Defendants until after the expiration of the initial extension, that had been granted by the District Court in Michigan, until after the expiration of the deadline initially established by this Court, and until after his claim was barred by the applicable Statute of Limitations. See, *Minnesota Statutes Section 541.07(1)*.

**6.** In addition to the untimeliness of the Plaintiff's Motion, and the undue delay that would plague this action were the Motion to be granted, if our analysis were driven solely by Rule 15(a), we believe that the futility of the Motion would also warrant its denial. See, *Humphreys v. Roche Biomedical Laboratories, Inc.*, 990 F.2d 1078, 1082 (8th Cir.1993) (standard applied in futility analysis is the same as that invoked in a Motion to Dismiss).

Under Rule 16(b), a Court's Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." As recently expressed, in *Rouse v. Farmers State Bank of Jewell,* 866 F.Supp. 1191 (N.D.Iowa 1994):

> A scheduling order is an important tool in controlling litigation. *Jochims v. Isuzu Motors, Ltd.,* 145 F.R.D. 507, 510 (S.D.Iowa 1992). A magistrate judge's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Gestetner Corp. v. Case Equip. Co.,* 108 F.R.D. 138, 141 (D.Me.1985). Scheduling orders have become increasingly critical to the district court's case management responsibilities because "[i]t is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars." *Id.* The Court in *Geiserman v. MacDonald,* 893 F.2d 787 (5th Cir.1990), also observed that the flouting of discovery deadlines causes substantial harm to the judicial system.

We doubt that it can be seriously questioned that "[a]dherence to reasonable deadlines is * * * critical to maintaining integrity in court proceedings." *Id.* at 1199.

Here, the proposed amendment would have the necessary effect of resurrecting frivolous claims against the original Medical Defendants and, we think, claims against the intended Defendants that, even if they were arguably cognizable, would place this action back into its infancy. Finding no cause, let alone good cause for delay, we deny the Motion to Amend, for any delay, that has

been occasioned in the framing of the Plaintiff's Complaint, is solely attributable to the Plaintiff's lack of due diligence. See, *Notes of Advisory Committee on 1983 Amendment to Rule 16(b)* ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

 Lastly, we must address the Stipulation, by the Plaintiff and American Steamship, for a voluntary dismissal, pursuant to Rule 41(a)(1)(ii), since we have denied the Plaintiff's Motion for leave to amend. When properly substantiated, such a Stipulation creates an "unconditional right" to a voluntary dismissal of the action, which is self-executing. See, *Gardiner v. A.H. Robins Co., Inc.,* 747 F.2d 1180, 1190 (8th Cir.1984). Here, however, the pertinent Stipulation fails to conform to the requisites of the Rule, because the Medical Defendants have not been joined in its execution.

As here pertinent, Rule 41(a)(1)(ii), provides as follows:

> Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court * * * by filing a stipulation of dismissal signed by all parties who have appeared in the action.

Indisputably, the Stipulation at issue has not been executed by the Medical Defendants who—with equal certainty—"have appeared in the action." Although the Plaintiff appears to contend that no particular meaning attaches to this language, we are not satisfied that those who chose to employ this qualifier

---

*Drilling Co.,* 688 F.2d 256, 260 (5th Cir.1982), as follows:

> A private land-locked physician who treats a patient who happens to have been injured at sea, does not thereby enter into an implied maritime contract. We can find absolutely no support for the proposition that an ordinary, private, on shore physician who treats an injured sailor has thereby submitted himself to the rules of maritime commerce. Rather, it has been consistently held that it is state law that controls in cases such as this.

See also, *Wood v. Standard Products Co., Inc.,* 456 F.Supp. 1098, 1103 (E.D.Va.1978); and see, *Antoine v. Zapata Haynie Corp.,* 777 F.Supp. 1360 (E.D.Tex.1991) (Court finds maritime juris-

diction where emergency medical treatment, including the alleged malpractice, occurred on a vessel in navigable waters).

Therefore, on close review, we find that the cases, upon which the Plaintiff relies, dispel any notion that he has a viable claim for medical malpractice which arises from any source, other than the State laws of Minnesota and, as to those claims, they are either time-barred, or they relate to other medical services which are separate and distinct from his prior claims against the Medical Defendants. If the Plaintiff wishes to pursue those latter claims, he is freely able to do so without, impermissibly, engrafting discretely distinct claims of wrongdoing from those he has advanced here over the last twenty-eight months.

intended it to be a mere nullity. Cf., *United States v. Altman*, 750 F.2d 684, 695 (8th Cir.1984) ("Rule 41(a)(1)(ii) permits the dismissal of an action upon the signing of a stipulation by all parties who have appeared in the case.").[7]

Accordingly, we decline to give legal effect to the Plaintiff's interest in employing a voluntary dismissal pursuant to Rule 41(a)(1)(ii), Federal Rules of Civil Procedure.[8]

NOW, THEREFORE, It is—

ORDERED:

That the Plaintiff's Motion for leave to amend his Complaint [Docket No. 105] is DENIED.

---

**7.** Even if we acceded to the Plaintiff's view, that the language was mere surplusage, the continuing presence of the Medical Defendants, as nominal participants in this litigation, undermines any claim that a Rule 41(a)(1)(ii) dismissal, without Court approval, could be accomplished without the acquiescence of all parties of Record. We think the circumstances of this case underscore the desirability of the qualifier that the Plaintiff would ask us to ignore.

Unlike the usual case, in which a voluntary dismissal is coupled with a settlement of a claim or claims, here the terms of the Stipulation make clear that the Plaintiff and American Steamship merely wish to relocate their dispute to a different forum. While, in and of itself, such a rationale for a voluntary dismissal would not appear to be ruinous of proper judicial administration, the Medical Defendants express the understandable concern that the stipulating parties are intending to do no more than recommence this action in the Eastern District of Michigan—from which is was originally transferred some two years ago—with the prospect that American Steamship will commence a third-party claim against them, for contribution or indemnity, while the Plaintiff pursues an appeal of the District Court's Summary Judgment Order and, re-

sultantly, they will be confronted with dual prosecutions and, perhaps, conflicting claims. Nor can we casually discount the likelihood that any proceeding, in the Eastern District of Michigan, will, once again, be transferred to this Court. In view of what has transpired to date, we do not view the potential for such prejudice, and judicial inefficiency, to be wholly unsubstantiated.

**8.** Necessarily, our determination is premised upon the Record before us. If we misperceive the District Court's Summary Judgment Order, the District Court is well positioned to easily correct our error. We wish to make our conclusion unmistakable, however, that the same result would have followed, irrespective of the Rule 54(b) finality issue.

Similarly, if the parties wish, unanimously, to agree to a dismissal of the Plaintiff's claim against American Steamship, they are capable of facilely accomplishing that result. We are not persuaded, however, that the current set of Motions, which are sponsored by the Plaintiff and American Steamship, amount to anything more purposeful than a wasteful procedural churning that seriously disserves the interests of justice and unnecessarily dissipates rare judicial resources.