**BIRCHWOOD LABORATORIES, INC.,**
**Plaintiff and Counterclaim**
**Defendant,**

v.

**BATTENFELD TECHNOLOGIES,**
**INC., Defendant and Counter-**
**claim Plaintiff.**

Civ. No. 09–3555 (MJD/JJK).

United States District Court,
D. Minnesota.

Feb. 1, 2011.

John L. Krenn, Esq., Dean C. Eyler, Esq., and Jeremy L. Johnson, Esq., Gray, Plant, Mooty, Mooty & Bennett, P.A., for Plaintiff and Counterclaim Defendant.

Paul J. Robbennolt, Esq., Dorsey & Whitney LLP, Julia E. Markley, Esq., and Bryan D. Beel, Esq., Perkins Coie LLP, for Defendant and Counterclaim Plaintiff.

## ORDER AND MEMORANDUM

JEFFREY J. KEYES, United States Magistrate Judge.

This matter is before the Court on Plaintiff and Counterclaim Defendant's Motion to Amend its Complaint and Answer to Counterclaim (Doc. No. 44). A hearing was held on January 26, 2011. Based on the parties' submissions, and on the file and all the records and proceedings therein, **IT IS HEREBY ORDERED** that:

1. Plaintiff and Counterclaim Defendant's Motion to Amend its Complaint and Answer to Counterclaim (Doc. No. 44), is **GRANTED;** and

2. The attached Memorandum is incorporated by reference.

## MEMORANDUM

### I. INTRODUCTION

By its motion to amend, Birchwood Laboratories, Inc. ("Birchwood") seeks to assert a claim for inequitable conduct against Battenfeld Technologies, Inc. ("Battenfeld"). Birchwood alleges that when prosecuting the '877 patent, Battenfeld and its counsel committed inequitable conduct before the PTO by intentionally withholding material information concerning the '877 patent's prior art. Battenfeld opposes the motion and argues that leave to amend should be denied for two main reasons: (1) Birchwood has not shown good cause to amend; and (2) the proposed amendment would be futile.

### II. BACKGROUND

Birchwood is a Minnesota corporation, with its principal place of business in Eden Prairie, Minnesota. It produces various products for the shooting sports industry, including reactive or "flake off" targets containing an ink layer above the paper substrate that explodes in contrasting color around the bullet hole, making the bullet hole more visible to the naked eye. Battenfeld is a Missouri corporation, which also manufactures, markets and sells products for the shooting sports industry. These products include the Insta–View and Orange Peel line of reactive targets, which contain two or more colors of ink on the release layer of the target, making the

location of the shot more easily visible to the shooter a long distance away.

On January 26, 2006, Battenfeld filed a patent application with the United States Patent and Trademark Office ("PTO") titled "Firearm Targets and Methods for Manufacturing Firearm Targets." On April 10, 2006, it filed a "Petition to Make Special Under 37 CFR 1.102(d)," asking the PTO to expedite the processing of this patent application. Ultimately, on November 14, 2006, the PTO granted Battenfeld's Petition to Make Special on the basis of existing infringement by the unnamed competitor. On December 15, 2009, the PTO issued United States Patent No. 7,631,877 (the "'877 patent") to Battenfeld. The '877 patent describes a reactive target having at least two different colors of ink, and "gaps"—an absence of ink between the black circles of inc on the top layers of the target that enables the shooter to see through the gap to the different colored ink located on the bottom level of the target.

Also on December 15, 2009, Birchwood filed this action seeking a declaratory judgment of invalidity or non-infringement of the '877 patent. On May 10, 2010, following Judge Davis' denial of Battenfeld's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, Battenfeld answered and counterclaimed that Birchwood's Shoot–N–C target products infringe the '877 patent.

On January 11, 2011, Birchwood filed the instant motion to amend its Complaint and Answer to Counterclaim to assert a claim for inequitable conduct. For the reasons set forth below, the Court grants Birchwood's motion.

## III. ANALYSIS

### A. Good Cause to Amend

The deadline to amend pleadings in this case was September 1, 2010. Because Birchwood has moved to amend its Com-plaint after the deadline for amending pleadings expired, the "good cause" standard of Rule 16(b) applies to its motion to amend. *Equal Empl. Opp. Comm. v. Hibbing Taconite, Co.,* 266 F.R.D. 260, 265 (D.Minn.2009) (stating that because the deadline to amend pleadings has expired under court's scheduling order, the defendant is required to show good cause for leave to amend) (citing *Alholm v. Am. S.S. Co.,* 167 F.R.D. 75, 77 (D.Minn.1996)); *see also Freeman v. Busch,* 349 F.3d 582, 589 (8th Cir.2003) (holding that when a party has filed a motion to amend after the deadline provided in a court's pretrial scheduling order, the court may properly require, pursuant to Federal Rule of Civil Procedure 16(b), that good cause be shown).

Battenfeld argues that Birchwood has not shown good cause for its delay because the facts alleged in Birchwood's Proposed Amended Complaint come from the '877 patent and its prosecution history, which were available to Birchwood when it filed its original Complaint. Battenfeld also notes that Birchwood never asked for an extension to the deadline to file amended pleadings, even when the parties jointly asked the Court to extend other deadlines in the Scheduling Order on December 29, 2010.

Birchwood counters that it has good cause to amend after the deadline because it diligently prepared its inequitable conduct claims and pursued discovery to uncover and confirm facts necessary to satisfy the heightened pleading standard under Rule 9(b) and *Exergen v. Wal–Mart Stores, Inc.,* 575 F.3d 1312 (Fed.Cir.2009). Birchwood also explains that it refrained from bringing the inequitable conduct claims sooner because it was concerned about the affect the pendency of such claims would have on the parties' chances of reaching a settlement during the De-

cember 2010 mediation in San Francisco. Birchwood, however, provided Battenfeld with a draft copy of the Amended Complaint, including the inequitable conduct claim on December 6, 2010 before the mediation, and Battenfeld's counsel was informed that a formal motion to amend would be forthcoming after the mediation. In sum, Birchwood argues that it was correct not to assert the inequitable conduct claims and defenses based on the patent file histories alone, but rather to first confirm its suspicions through additional discovery and to exhaust the efforts to achieve a successful mediation of the claims.

The Court agrees. Indeed, Battenfeld's argument to the contrary, if adopted, would only encourage litigants to prematurely allege inequitable conduct on the merest suspicion, or run the risk of having the defense blocked as untimely. This would result in the very "plague" of unsubstantiated inequitable conduct claims that the Federal Circuit has warned against. *See Burlington Indus., Inc. v. Dayco Corp.,* 849 F.2d 1418, 1422 (Fed.Cir.1988) ("the habit of charging inequitable conduct in an almost every major patent case has become an absolute plague ... A patent litigant should be made to feel, therefore, that an unsupported charge of 'inequitable conduct in the Patent Office' is a negative contribution to the rightful administration of justice.")

Importantly, numerous courts have expressly found that good cause exists to add an inequitable conduct claim after the deadline for amending pleadings has run. *See Enzo Life Sciences, Inc. v. Digene Corp.,* 270 F.Supp.2d 484, 487–88 (D.Del. 2003) (finding that "good cause" to add inequitable conduct claims was shown after the expiration of a deadline for the amendment of pleadings by waiting until the moving party could confirm its suspicions of inequitable conduct by taking the depo-

sitions of the two inventors of the patent at issue); *Douglas Press Inc. v. Int'l Gamco, Inc.,* Civ. No. 00–7340, 2004 WL 2937392 *1 (N.D.Ill. May 3, 2004) (stating that because of the seriousness of inequitable conduct claims and the high pleading requirements, it is proper for a party to wait beyond the scheduling deadline before asserting such claims); *Advanced Cardiovascular Sys. Inc. v. SciMed Life Sys., Inc.,* 989 F.Supp. 1237, 1247 (N.D.Cal. 1996) (finding that defendant is entitled to confirm factual allegations through discovery before amending to include inequitable conduct defense).

These cases recognize that it would be manifestly unfair to require a party to plead a claim upon first discovering it when that claim is subject to the heightened pleading requirements of Rule 9(b) and the party lacks the information necessary to properly plead such a claim. Simply because a party knows of *some* facts in support of its claim before the deadline does not mean that a claim subject to the heightened pleading requirements of Rule 9(b) must be asserted at that time. *See Enzo,* 270 F.Supp.2d at 489 (finding that although facts underlying inequitable conduct claims were available to defendant in the public prosecution history of the patent, defendant "was prudent and possibly required to confirm the factual allegations through discovery" because the Rule 9(b) "pleading with particularity" requirement was implicated). *See also Go Med. Indus. Pty, Ltd. v. C.R. Bard, Inc.,* Civ. No. 93– 1538, 1995 WL 605802, at *4 (N.D.Ga.1995) ("While defendant may have obtained some information to support its new allegations in September of 1994 this court will not penalize defendant for obtaining additional, confirming information in January 1995 to support its claims—especially given that Rule 9(b) requires that allegations of fraud, such as inequitable conduct

before the U.S. Patent Office, be stated with particularity.")

Further, the Court concludes that good cause exists and the motion to amend should be granted where, as here, discovery is still open and no dispositive motions have been filed. Any claim of prejudice based on the need for additional discovery is greatly diminished where the claim to be added overlaps with some of the claims already pled, as is the case here. For example, the inequitable conduct claim is substantially related to the previously pled invalidity of the '877 patent claim, and both claims require proof of the materiality of the "gaps" feature. Beyond that, the inequitable conduct allegations are based on Battenfeld's own conduct and information already within its possession. Thus, there is likely no discovery for Battenfeld to conduct on this issue. As for Birchwood, it represents that there is sufficient time under the current discovery schedule to complete discovery on its new claims. Therefore, the Court concludes that Birchwood has demonstrated good cause to file its amended pleadings.

### B. Whether Birchwood's Inequitable Conduct Claims are Futile

■ Here, Battenfeld argues that the proposed amendments should be denied for futility. A futility challenge to a motion to amend a complaint is successful where "claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted." *DeRoche v. All Am. Bottling Corp.*, 38 F.Supp.2d 1102, 1106 (D.Minn.1998); *see also Lunsford v. RBC Dain Rauscher, Inc.*, 590 F.Supp.2d 1153, 1158 (D.Minn.2008) (stating that a motion to amend is futile if the amended complaint would not survive a motion to dismiss). "Likelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous.'" *Cohen v.*

*Beachside Two–I Homeowners' Ass'n*, No. Civ. 05–706 (ADM/JSM), 2005 WL 3088361, at *13 (D.Minn. Nov. 17, 2005) (quoting *Becker v. Univ. of Neb.*, 191 F.3d 904, 908 (8th Cir.1999)).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555, 127 S.Ct. 1955. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556, 127 S.Ct. 1955. Whether a complaint states a claim is a question of law. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986).

Battenfeld argues that the addition of the inequitable conduct claims would be futile. It contends that the alleged failure to disclose the two prior art products—the Birchwood's Shoot–N–C target and Battenfeld's Insta–View target—cannot form the basis of Birchwood's inequitable conduct because Battenfeld's previously disclosed "Edwards" patents embody the exact "gaps" feature invention present in the Shoot–N–C and Insta–View products. As such, Battenfeld argues that it was not required to disclose the Shoot–N–C and Insta–View targets because they were cumulative, not material prior art or information.

■ At this point, the Court cannot conclude that the proposed amendment would be futile. The allegations, which the Court must assume are true, are sufficient to raise a right to relief above the speculative level. Birchwood provided the " 'grounds' of [its] 'entitle[ment] to relief' " beyond "labels and conclusions," with "enough

facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955. As stated above, " '[l]ikelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous.' " *Cohen,* 2005 WL 3088361, at *13 (quoting *Becker,* 191 F.3d at 908). To *prove* unenforceability by inequitable conduct, the alleged infringer must provide *"clear and convincing evidence"* of each element. *See Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,* 537 F.3d 1357, 1365 (Fed.Cir.2008) (emphasis added). But to withstand a motion to dismiss, Birchwood must only *plead* facts that (1) Battenfeld or its counsel omitted or misrepresented material prior art or information; (2) that Battenfeld and its counsel knew of the materiality of the prior art; and (3) that Battenfeld and its counsel intended to deceive the PTO by deliberately withholding the prior art or information. *See id.* (discussing the elements of inequitable conduct). Lastly, under *Exergen,* and Fed.R.Civ.P. 9(b), Birchwood must identify the "specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen,* 575 F.3d at 1327.

The Court concludes that Birchwood has pled the inequitable conduct claim with requisite particularity and that the claim is not futile because the factual allegations are sufficient to raise a right to relief above the speculative level and the claim is plausible on its face. For example, Birchwood specifically identifies the allegedly withheld prior art and sets forth facts underlying the contention that the alleged non-disclosure was knowing and willful: "Battenfeld and its counsel failed to inform the examiner that the first generation Birchwood Shoot–N–C and Battenfeld's Insta–View were material prior art that disclosed the critical "gaps" feature of the '877 Patent, and thus anticipated independent claims 1, 12, 13 thereof." (Doc.

No. 48, Decl. of John Krenn, ("Krenn Decl.") ¶ 2, and Ex. 2 ("Am. Compl.") ¶¶ 28–45.) Birchwood also includes enough facts in support of its allegation that "Battenfeld and its counsel were aware prior to and during the prosecution of the '877 Patent that the "gaps" feature of the independent claims of the '877 Patent was disclosed by the Insta–View and Shoot–N–C, and were further aware that this disclosure was highly material to the patentability of the '877 Patent." (*Id.,* Am. Compl. ¶¶ 51–53.)

Battenfeld argues that Birchwood cannot establish that the undisclosed information was material to the '877 patent. Relying on *World Wide Stationery Mfg. Co. v. U.S. Ring Binder, L.P.,* 632 F.Supp.2d 912, 916 (E.D.Mo.2009), Battenfeld argues that "absent a clear and convincing showing of the materiality of the prior art, a claim of inequitable conduct must fail as a matter of law." (Doc. No. 51, Def.'s Mem. 9.) (citing *World Wide,* 632 F.Supp.2d at 916). But that case was resolving a motion for summary judgment "after adequate discovery" and "fully briefed" inequitable conduct issues. *World Wide,* 632 F.Supp.2d at 913, 915. And in *World Wide,* "it [was] undisputed that the Horn Sample embodies the exact invention disclosed in the Horn Application," whereas here, the parties clearly disagree regarding whether the "Edwards" patent contained the relevant "gaps" feature and whether its disclosure constituted disclosure of material prior art. *Id.* at 916. For one, Battenfeld disputes Birchwood's characterization of the "Edwards" patent and its role in the prosecution of the '877 patent. These are factual disputes that would require an analysis of the evidence and the likelihood of Birchwood's success on the merits. Battenfeld effectively seeks to challenge the meaning and interpretation of specific factual allegations raised by Birchwood and to argue the merits of

Birchwood's factual allegations. This it cannot do on a motion to amend.

It may be that Birchwood's inequitable conduct claim will not survive a Rule 56 summary judgment motion. But that ultimate determination is better left to a later disposition. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (internal quotations and citations omitted). Here, the futility analysis of the Amended Complaint must be based on a 12(b)(6) motion to dismiss standard and not a Rule 56 summary judgment standard. At this point, the Court concludes that Birchwood has alleged a set of facts that could support a finding of inequitable conduct and the proposed amendment is not futile.