**ADVANCED CARDIOVASCULAR SYSTEMS, INC., Plaintiff,**

v.

**SCIMED LIFE SYSTEMS, INC., Defendant.**

**No. C–95–03580.**

United States District Court, N.D. California.

Nov. 12, 1997.

---

Richard H. Abramson, Hope L. Hudson, Heller Ehrman White & McAuliffe, Palo Alto, CA, Edward A. Mas, Timothy J. Malloy, Gregory J. Vogler, David D. Headrick, James M. Hafertepe, Leland G. Hansen, Eligio C. Pimentel, Stephen H. Bean, Alejandro Menchaca, McAndrews Held & Malloy, Chicago, IL, for Plaintiff.

Kenneth E. Keller, Bronson Bronson & McKinnon, San Francisco, CA, Philip S. Johnson, Steven B. Samuels, Steven J. Rocci, Barbara L. Mullin, Kevin M. Flannery, Henrik D. Parker, David R. Bailey, Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, PA, David Eiseman, Quinn Emanuel Urquhart Oliver & Hedges LLP, Palo Alto, CA, for Defendant.

## ORDER

JENSEN, District Judge.

On October 22, 1997, the Court heard argument on SciMed's motion for leave to amend its first amended answer, ACS's counter-motion for judgment on the pleadings against SciMed's First, Third, Fourth, Fifth, Sixth and Seventh defenses, and SciMed's counter-motion for a stay. David Eisman, Henrik Parker, and Philip Johnson appeared on behalf of SciMed; David Headrick, Leland Hansen and Edward Mas II appeared for ACS. Having considered the arguments of counsel, the papers submitted, the applicable law, and the record in this case, the Court hereby GRANTS SciMed's Motion for Leave to Amend, DENIES ACS's Counter–Motion except that the Court strikes SciMed's Fourth Defense, and DENIES SciMed's Contingent Counter–Motion for a stay.

## I. BACKGROUND

### A. *Factual Background and Procedural History*

Advanced Cardiovascular Systems, Inc. ("ACS") and SciMed Systems, Inc. ("SciMed") are companies engaged in developing, manufacturing, promoting, and selling interventional medical devices, including rapid exchange catheters used in percutaneous transluminal coronary angioplasty ("PTCA") for treating coronary artery disease.[1] ACS filed the present action[2] against SciMed on October 10, 1995, alleging infringement of the '548, '273, '233 and '395 patents, all of which were issued to Dr. Paul G. Yock between August 20, 1990 and September 19, 1995. Plaintiff alleges that SciMed's "Express Plus" and "Express Plus II" rapid exchange PTCA catheters infringe on the named patents. On December 6, 1995, ACS filed an amended complaint. The Court denied SciMed's motion to dismiss the amended

---

1. During a PTCA procedure, a balloon dilatation catheter is carried through the patient's vasculature over a guidewire to a point where deposits, or "lesions," in the coronary arteries have blocked or narrowed the arteries thereby restricting blood flow. Once the catheter is in place, the balloon is inflated to compress or break the material forming the lesion in order to open the restricted artery to improve blood flow.

2. This action is related to another case between these parties currently before the Court. On March 12, 1996, ACS filed an action against SciMed, C–96–0950–DLJ, for infringement of U.S. Patent No. 5,496,346 ("the '346 patent"), claiming that SciMed's "Express Plus II" and "Leap Express Plus" catheters infringe one or more claims of the '346 patent. The '346 patent, entitled "Reinforced Balloon Dilatation Catheter With Slitted Exchange Sleeve and Method," was issued on March 5, 1996 in the names of the inventors, Michael J. Horzewski and Dr. Paul G. Yock. The '346 patent relates generally to rapid exchange balloon dilatation catheters which are used in PTCA for treating coronary artery disease.

complaint on May 13, 1996. In that Order, the Court rejected SciMed's argument that ACS lacked standing to bring suit on the Yock patents.

SciMed filed its first amended answer on June 21, 1996. The answer asserted nine affirmative defenses. In its September 6, 1996 Order, this Court struck with prejudice SciMed's Ninth Defense (that ACS should be estopped from enforcing the '395 or '233 patents based on delay in prosecution).

In March 1997, the parties stipulated to proceed in conformity with the proposed Local Rules of Practice in Patent Cases. Pursuant to the deadlines contained in the March 10, 1997 stipulation and order, ACS provided SciMed with a pleading setting forth the asserted claims of the Yock patents on February 28, 1997. On April 18, 1997, ACS was served with SciMed's Initial Disclosure of Prior Art which set forth the bases for the asserted claims of invalidity of the Yock patents.

On July 23, 1997, SciMed filed a motion for leave to amend its first amended answer. SciMed's second amended answer would add new defenses of invalidity based on obviousness and anticipation and unenforceability based on inequitable conduct before the U.S. Patent Office.

On August 18, 1997, ACS filed an opposition to defendant's motion as well as a counter-motion for judgment on the pleadings as to certain of SciMed's affirmative defenses. In addition to arguing that SciMed unduly delayed in raising its defenses, ACS's opposition argues that previous settlement agreements and consent judgments in related litigation have a preclusive effect on SciMed's proposed amended defenses. ACS argues that principles of claim and issue preclusion render SciMed's amendments futile.

In response, on September 8, 1997, SciMed filed a contingent counter-motion to stay pending arbitration. In its counter-motion, SciMed contends that, if denying its motion for leave to amend its answer would be based on interpretation of the earlier agreements between the parties, arbitration would be the proper forum in which to seek interpretation of those agreements.

## B. Legal Standards

### 1. Leave to Amend

■ Federal Rule of Civil Procedure 15 governs the amendment of pleadings. The rule provides that, aside from amendment of right as provided in the Rule, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). This rule reflects an underlying policy that disputes should be determined on their merits, and not on the technicalities of pleading rules. *See Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Accordingly, the court must be very liberal in granting leave to amend a complaint. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990) (leave to amend granted with "extreme liberality"); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989); *Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 530 (N.D.Cal.1989) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987)).

■ Once a party seeking leave to amend has given a legitimate reason for amendment, the burden shifts to the party opposing amendment to demonstrate why leave to amend should not be granted. *Genentech*, 127 F.R.D. at 530–31 (citing *Senza–Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed.Cir.1986)); William W. Schwarzer et al., *Federal Civil Procedure Before Trial*, § 8:415, at 8–75 (1991). There are several accepted reasons why leave to amend should not be granted, including the presence of bad faith on the part of the plaintiff, undue delay, prejudice to the defendant, futility of amendment, and that the party has previously amended the relevant pleading. *See Ascon Properties*, 866 F.2d at 1160; *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 809 (9th Cir.1988). The court has the discretion to determine whether the presence of any of these elements justifies refusal of a request to amend the pleading.

### 2. Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c),

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

"All allegations of fact by the party opposing [judgment as a matter of law] are accepted as true, and are construed in the light most favorable to that party." *General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir.1989).

Rule 12(c) itself and supporting case law indicate that if matters outside the pleadings are presented to and not excluded by the court, the motion for judgment on the pleadings is converted into a Rule 56 summary judgment motion. *See* Schwarzer, *supra,* § 9:339; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir.1989). The fact that such extrinsic material was submitted to the court does not automatically convert a motion for judgment on the pleadings into one for summary judgment. It must appear that the court relied on the extrinsic evidence in reaching its conclusions before that conversion occurs. *Homart Dev. Co. v. Sigman,* 868 F.2d 1556 (11th Cir.1989).

## II. ARGUMENTS

### A. *Res Judicata and Collateral Estoppel*

#### 1. *The 1991 Settlement between ACS and SciMed*

In August and October of 1991, ACS filed two suits against SciMed for patent infringement. ACS alleged that SciMed's EXPRESS catheter infringed the Yock '548 and '273 patents. In December 1991, ACS and SciMed entered into a settlement agreement and stipulated to dismissal of the action with prejudice. Under the terms of the set-

tlement agreement, SciMed paid ACS $48 million and agreed to pay ACS a 20% royalty for a two-year license to phase out the EXPRESS catheter.

The Settlement Agreement contains the following provision that is relevant to the parties' dispute in the present case:

> Mutual Release: ... each of ACS/Lilly and SciMed ... hereby releases and discharges the other parties ... from any and all manner of debts, claims, demands, damages, liabilities, obligations, causes of action (including, without limitation those asserted in the Complaints, Answers and Counterclaims and any proposed Amended Answer and Counterclaim in the litigation), agreements, suits, sums of money, obligations and rights whatsoever, whether known or unknown, suspected or unsuspected, at law or in equity, which are based on actions or inaction occurring prior to the effective date of this Agreement and which each party now owns or holds, or at any time heretofore owned or held, by reason of any act, matter, cause of thing whatsoever.

ACS Exh. 3 (Settlement Agreement) at 15–16. Pursuant to this settlement agreement, the Court entered a Stipulated Order of Dismissal on January 9, 1991. ACS Exh. 4 (Order of Dismissal).

#### 2. *The 1994 Settlement Between ACS and BSC*

In May of 1994, ACS filed a cause of action for patent infringement alleging that the SYNERGY catheter manufactured by Boston Scientific Corporation ("BSC") infringed the same '548 and '273 Yock patents.[3] In September 1994, ACS and BSC settled this action. Pursuant to the ACS/BSC Settlement Agreement, the parties agreed to entry of a Stipulation and Consent Judgment that provides in pertinent part:

> The Court being fully apprised of the facts underlying the claims by the presentations and representations by counsel, this Court hereby states and orders as follows:
>
> ...

**3.** The parties dispute the nature of the relationship between SciMed and BSC. According to

ACS, SciMed is a division of BSC, while SciMed maintains that it is a subsidiary of BSC.

2. The patents in suit, U.S. Letters Patents Nos. 5,061,273 (the "'273 patent") and 5,040,548 (the "'548 patent") are not invalid, are enforceable, are owned by Dr. Paul Yock, and are exclusively licensed to ACS. ACS Opp., Exh. 5 (Consent Judgment). In accordance with the settlement, BSC paid ACS $1 million and agreed to pay a 30% royalty for a limited two-year license to phase out its SYNERGY catheter.

### 3. *Claim preclusion*

▐▌ General principles of res judicata apply to issues of patent validity and enforcement. *Foster v. Hallco Mfg. Co.,* 947 F.2d 469, 475 (Fed.Cir.1991). "The general concept of claim preclusion is that when a judgment is rendered in favor of a party to litigation, the plaintiff may not thereafter maintain another action on the same "claim," and defenses that were raised or could have been raised by the defendant in that action are extinguished." *Id.* at 478 (citing Restatement (Second) of Judgments, §§ 18, 19 & comments). ACS argues that under the doctrine of claim preclusion, SciMed cannot raise invalidity or unenforceability of the '273 or '548 patents as a defense, since these defenses were raised or could have been raised by SciMed in the previously settled litigation.

▐▌ In *Foster,* the Federal Circuit considered whether a claim of patent invalidity was precluded because of a previous consent judgment involving the same patent, but a different allegedly infringing technology. While holding that consent judgments may be entitled to claim preclusion, the court ruled that claim preclusion can apply only

where the prior suit between the parties was on the same cause of action. *See id.* at 480. The court explained that "for claim preclusion to apply . . ., the devices in the two suits must be essentially the same." *Id.* at 479–80.[4] This is because the essential facts of a patent infringement claim—the "cause of action" for claim preclusion purposes—"is the structure of the device or devices in issue." *Id.* at 479. Moreover, the court pointed out that it is the proponent of claim preclusion who bears the burden of showing that the cause of action in the two suits was the same. *Id.* at 480.

SciMed relies on *Foster* for the proposition that claim preclusion is inappropriate where the subsequent case involves a different allegedly infringing technology. SciMed argues that the EXPRESS PLUS/II catheters at issue in the instant case are significantly distinct from the EXPRESS catheter at issue in the 1991 litigation between ACS and SciMed. Specifically, SciMed notes that the EXPRESS catheter has two lumens at its distal end while the EXPRESS PLUS/II catheters have a single lumen. Furthermore, the single lumen shaft portion of the EXPRESS PLUS/II catheters has dual seals so that it can seal onto the guidewire. In contrast, the lumen shaft portion of the EXPRESS catheter could not seal onto the guidewire. According to SciMed, these changes prevent the products from being considered "essentially the same," and therefore prevent the application of claim preclusion in the instant litigation.

▐▌ ACS does not carry its burden under *Foster* of showing that the infringing devices in the two suits are essentially the same.[5]

---

4. ACS argues that this aspect of the *Foster* case was merely dicta as the holding of the case was limited to the issue of whether principles of res judicata apply at all to a consent decree in a patent case. To support its position, ACS quotes part of the *Foster* decision in which the Court wrote that it was "unable to rule on any of these questions [beyond the *Lear v. Adkins*] question as a matter of law and, accordingly must vacate the district court's summary judgment ruling and remand for its full analysis of these issues in accordance with this opinion." *Foster,* 947 F.2d at 483. ACS's argument is unfounded. The court remanded the case for a determination of whether the devices at issue were essentially the same as those in the previous litigation. The

court made it clear that if the lower court found the devices to be materially different, claim preclusion would not apply. *Id.* at 480. In so doing, the court's remand instructions were the guiding principles to be followed by the district court. This Court intends to follow those guiding principles.

5. The same is true with regard to the ACS/BSC litigation. ACS has presented no evidence to show that the EXPRESS PLUS/II catheters at issue in the present case are "essentially the same" as the SYNERGY catheter that was the subject of the ACS/BSC settlement agreement.

**1244**

ACS's entire argument in this regard is found in a footnote in its opposition to SciMed's Motion for Leave to Amend. In that footnote, ACS points out that the products at issue "are *not* meaningfully different *in the context of the Yock patents.*" ACS's Opp. at 10 n. 4. To support this assertion, ACS asserts that the catheters all have relatively long guidewire lumens designed to provide increased pushability and prevent kinking and other malfunctions. *Id.* This one reference to a similarity between the products does not satisfy ACS's burden to demonstrate that the products are essentially the same. Accordingly, if *Foster* controls, claim preclusion would not bar SciMed from asserting defenses of invalidity and unenforceability.

■ ACS argues that *Foster* misapplied the Ninth Circuit's approach to res judicata. In *Foster,* the court "[took] into consideration the law of the regional circuit, here the Ninth, on the application of general principles of res judicata with respect to a consent judgment." *Id.* at 477 n. 7. The court proceeded under the assumption that the Ninth Circuit and Federal Circuit did not significantly differ in their approaches. *Id.* ACS contends that the Ninth Circuit approach differs from the approach utilized in *Foster.* Indeed, to the extent that the Federal Circuit and the Ninth Circuit disagree on the appropriate test for claim preclusion, this Court would be obligated to follow the Ninth Circuit approach, since general principles of res judicata are nonpatent matters over which 28 U.S.C. § 1295(a)(1) does not afford the Federal Circuit exclusive jurisdiction. *See Hartley v. Mentor Corp.,* 869 F.2d 1469, 1471 n. 1 (Fed.Cir.1989).

The parties dispute whether *Foster* followed the appropriate standard for determining claim preclusion in the Ninth Circuit. ACS cites *Robertson v. Isomedix, Inc. (In re International Nutronics, Inc.),* 28 F.3d 965, 970 (9th Cir.1994), and *C.D. Anderson & Co. v. Lemos,* 832 F.2d 1097, 1100 (9th Cir.1987), to show that the Ninth Circuit considers the following four factors in determining whether successive suits involve the same cause of action:

(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

ACS points out that *Foster* only dealt with the fourth factor in concluding that preclusion would be appropriate only if the devices at issue in the two actions were essentially the same. ACS argues that this exclusive focus on the fourth factor was inconsistent with Ninth Circuit law which the Federal Circuit claimed to be applying. SciMed counters that the Federal Circuit's focus in *Foster* on the similarity, or lack thereof, between the devices in the two lawsuits was entirely consistent with Ninth Circuit's approach to claim preclusion. Indeed, in *Western Systems, Inc. v. Ulloa,* 958 F.2d 864, 871 (9th Cir.1992) (citing Restatement (Second) Judgments § 24(1)), the Ninth Circuit wrote that "[t]he test for whether a subsequent action is barred is whether it arises from the same 'transaction, or series of transactions as the original action.'" As ACS acknowledges, the same transaction factor is generally considered the most important. Plaintiff's Opp. to Leave to Amend at 7:7–8 (citing *C.D. Anderson & Co. v. Lemos,* 832 F.2d 1097, 1100 (9th Cir.1987)). Accordingly, it appears that *Foster*'s focus on the same transaction factor was consistent with Ninth Circuit law.

Even assuming that *Foster* should have addressed each of the four factors identified in *C.D. Anderson,* ACS's suggestion that *Foster* would have reached a different result under this four factor approach is unpersuasive. *Foster* linked patent validity issues in the initial litigation to the particular infringing device. *Foster* would not have found that the two suits involved "infringement of the same right" where the rights were asserted in the context of two different devices. Similarly, the Court would not have found that "the rights established in the prior judgment would be ... impaired by prosecution of the second action," because the right is defined, under *Foster,* in relation to a particular infringing device. Under these circumstances,

consideration of the additional factors identified in *C.D. Anderson* would not have altered the conclusion of *Foster.*

■ This Court rejects the argument that *Foster* incorrectly applied Ninth Circuit claim preclusion principles and finds that *Foster* controls the application of claim preclusion in the instant case. Under *Foster,* the fact that the validity or unenforceability of the '548 and '273 patents was raised or could have been raised as a defense in previous litigation between the parties does not preclude SciMed from asserting invalidity or unenforceability defenses to these patents in the context of different accused devices.

### 4. Issue Preclusion

■ Ordinarily, an issue must be fully litigated before the resolution of that issue will be conclusive in a subsequent action between the same parties. However, "there has come into existence a form of issue preclusion in connection with consent judgments that is not dependent on actual litigation of the matter." *Foster,* 947 F.2d at 480 (citing Restatement (Second) of Judgments, § 27 comment (e) and note at 269). The preclusive effect results not from the fact of an issue having been fully litigated, but instead from "an agreement manifesting an intention to be bound." *Id.* "Thus, if a consent judgment, by its terms, indicates that the parties thereto intend to preclude any challenge to the validity of a particular patent, even in subsequent litigation involving a new cause of action then that issue can be precluded." *Id.* at 480–81. Adopting the Restatement's position, *Foster* held that "provisions in a consent judgment asserted to preclude litigation of the issue of validity in connection with a new claim must be construed narrowly." *Id.* at 481.

The court applied these principles to the consent decree at issue in *Foster.* In *Foster,* the original consent decree stated that the '760 and '587 patents "are owned by plaintiffs and are valid and enforceable in all respects." *Id.* at 472. About four years after entry of this judgment, Hallco, the defendant in the initial action, began producing a new product for which it refused to pay royalties to Foster. *Id.* at 472–73. Hallco filed a action seeking a declaration that the '760 and '587 patents were invalid, in response to which Foster raised the defense of issue preclusion. Under these facts, the court concluded that the language of the consent decree at issue was ambiguous with regard to barring the defense of patent invalidity in future actions involving other accused devices. *Id.* at 482. Rather than consider extrinsic evidence of the parties intent, the court remanded the case to the district court to determine the intent of the parties. *Id.* at 482.

■ The consent judgment in the instant case is not distinguishable from the consent decree considered in *Foster.* As with the consent decree in *Foster,* the ACS/BSC consent judgment simply states that the patents-in-suit are valid and enforceable. It does not state that the parties intended to preclude the litigation of validity and enforcement in relation to subsequent infringement claims. Thus the language of the consent judgment, which must be narrowly construed by this Court, is insufficient to support ACS's contention that the parties intended to preclude litigation of patent validity and enforcement in subsequent suits involving new accused devices.

■ The ACS/SciMed 1991 agreement is even less likely to have a preclusive effect under *Foster.* ACS points out that the parties entered into a broad release discharging all claims (including those asserted in answers and counterclaims) based on actions occurring prior to the effective date of the agreement. *See* ACS Exh. 3 (ACS/SciMed Settlement Agreement) at 15–16. For evidence of intent to preclude future challenges to validity and enforceability of the Yock patents, ACS looks to the Agreement's royalty provision. The royalty provision provides that SciMed's obligation to pay royalties shall terminate upon final judgment of any court "in litigation between ACS and a third party" holding any of the Yock patent claims invalid or unenforceable.[6] ACS maintains that the

---

6. The *"EXPRESS Royalty Term"* provides as follows: "SciMed's obligation to pay royalties un-

der Section 12 … shall terminate with respect to any claim in the Yock Patents upon final

reference to challenges by a third party demonstrates the parties' respective intent to preclude SciMed from challenging the Yock patents' validity and enforceability. While such language *could* indicate an understanding that SciMed would be precluded from future validity and enforceability challenges, the language by no means compels such an interpretation. This Court is not in a position to guess at the implications of the third party reference. Instead, the Court must narrowly construe the previous agreement in order to determine whether issue preclusion applies. *See Foster*, 947 F.2d at 481. With no explicit resolution of future challenges to validity and enforceability of the '273 and '548 patents, the 1991 ACS/SciMed agreement does not have an issue-preclusive effect upon the instant litigation.

### B. *SciMed's Motion for Leave to Amend*

SciMed seeks to amend its answer in four respects. SciMed's second amended answer would (1) supplement SciMed's First Defense by alleging that claim 2 of the '233 patent is anticipated by the prior art under 35 U.S.C. § 102; (2) add a Ninth Defense that the patents-in-suit are invalid as being obvious in view of the prior art; (3) add a Tenth Defense that all four of the patents-in-suit are unenforceable due to inequitable conduct committed before the United States Patent and Trademark Office; and (4) add a counterclaim for declaratory judgment as to each affirmative defense. ACS argues in opposition that leave to amend should be denied for two reasons. First, ACS claims that the amendments are futile because of the preclusive effects of prior consent judgments. Second, ACS argues that SciMed unduly delayed in raising these defenses and therefore the amendments should be denied regardless of the preclusion issues.

#### 1. *Futility*

■■■ ACS contends that SciMed's proposed amendments are futile because the new defenses are barred by res judicata and collateral estoppel. Futility of amendment can, by itself, justify the denial of a motion

for leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995). However, because the Court has determined that the prior consent judgments do not preclude SciMed from raising invalidity and unenforceability defenses, the amendments in question are not futile based on the doctrines of claim and issue preclusion.

#### 2. *Delay and Prejudice*

Leave to amend may be denied where the movant delays amendment and the nonmoving party suffers prejudice from the delay. *See Bonin*, 59 F.3d at 845. ACS claims that SciMed has raised no new facts in its motion for leave to amend and has failed to explain its delay in seeking to amend. Furthermore, ACS claims that SciMed's undue delay in filing its motion to amend has prejudiced ACS.

##### a. *Inequitable Conduct Defense*

■■■ Prior to the issuance of the '548 and '273 patents at issue in this case, Patent Examiner Thaler had rejected Yock's applications for a '729 and a '200 patent. After receiving the first Office Actions with regard to the '729 and '200 applications, Yock and Edward Lynch, Esq., met with the Patent Examiner. At this interview, Yock presented a demonstration to the Examiner comparing an ACS RX catheter having a 25 cm guidewire lumen with a Schneider Monorail catheter having a 5 cm guidewire lumen. The purpose of the demonstration was to illustrate the greater pushability that results from a catheter with a longer guidewire lumen. Eight days after the interview, on March 15, 1991, Lynch filed Amendments in each of the '729 and '200 applications. The amendments identified the length of the guidewire lumen as "a distinguishing feature of the present invention." The '548 and '273 patents were subsequently issued.

SciMed contends that the demonstration mislead the Patent Examiner as to the importance of the length of the guidewire lumen. Specifically, SciMed argues that the performance difference between the two

judgment of any court of competent jurisdiction, in litigation between ACS and a third party

which judgment has not or cannot be appealed, holding such claim invalid or unenforceable."

catheters in the demonstration was not entirely due to the length of the lumen as suggested by Yock and Lynch. Instead, the ACS RX catheter was constructed with a proximal shaft section that had been internally stiffened through the use of a steel rod. This aspect, which was not disclosed in the '729 or '200 applications, was designed to rectify problems of insufficient pushability. According to SciMed, the failure of Yock or Lynch to address this structural difference between the demonstrated catheters mislead the Examiner as to the significance, of the design feature that led to the issuance of the '548 and '273 patents.

The parties dispute whether SciMed has unduly delayed in raising this inequitable conduct defense. SciMed states that it began its investigation into Dr. Yock's demonstration to the Examiner in preparation for its deposition of Lynch in April of 1997. SciMed contends that it promptly filed its motion for leave to amend after taking the deposition of Dr. Yock in which Yock confirmed Lynch's testimony that the Examiner was not informed of the steel rod in the ACS RX catheter's proximal shaft. ACS counters that all of the facts underlying the inequitable conduct claim were known long before the recent deposition of Dr. Yock. The Patent Office file histories contain information regarding the March 15, 1991 interview. These files were, according to ACS, undoubtedly read by SciMed as SciMed prepared to depose Dr. Yock and others regarding these patents in the 1991 litigation between ACS and SciMed. Furthermore, ACS argues that the deposition of Dr. Yock provided no new information regarding the interview. Instead, Yock simply responded that the information already gathered by SciMed from its deposition of Lynch three months earlier was a "perfectly fair summary." ACS argues that Yock's testimony cannot constitute new evidence justifying the timing of SciMed's motion to amend.

■ ACS cites *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995), for the proposition that the Court should deny leave to amend "where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." This correct statement of the law, however, does not prevent amendment in the instant case. Unlike the movant in *Bonin*, SciMed does not seek to assert a new legal theory arising from otherwise pleaded facts. *See Bonin*, 59 F.3d at 846 (denial of leave to amend upheld where four of petitioners amended claims related to facts pleaded in original petition and others were duplicative or patently frivolous). Instead, SciMed seeks to amend to raise a new theory based on a new set of facts only recently confirmed by SciMed. Furthermore, because the legal theory implicates Federal Rule of Civil Procedure 9(b), requiring pleading of fraud with particularity, SciMed was entitled to confirm factual allegations before amending to include the inequitable conduct defense.

### b. *Invalidity Defenses*

■ SciMed seeks to amend its answer to assert the invalidity of the subject patents on grounds of obviousness.[7] ACS was on notice of these defenses since SciMed provided ACS with SciMed's Prior Art Disclosure on April 18, 1997 pursuant to this Court's scheduling order. The disclosure sets forth the bases upon which SciMed asserts the invalidity of the Yock patents under 35 U.S.C. Sections 102 and 103. ACS does not dispute that the Prior Art Disclosure sets forth the bases for SciMed's invalidity defenses. Instead, ACS argues that this disclosure is not a substitute for amendment. According to ACS, SciMed has unduly delayed amending its claim regardless of whether the April disclosure put them on notice of these possible defenses. Yet it appears that ACS will suffer no prejudice from amendment given that ACS already knew of the facts and legal theory underlying these defenses. In light of the disclosure, ACS must have anticipated that these amendments would be forthcoming.

ACS's relies on *Tenneco Resins, Inc. v. Reeves Bros., Inc.*, 752 F.2d 630 (Fed.Cir.

---

**7.** SciMed also seeks to expand its defense of invalidity because of anticipation to cover claim 2 of the '233 patent.

1985) to support its position that SciMed should be denied leave to amend despite its Prior Art Disclosure. In *Tenneco*, the Federal Circuit affirmed a denial of leave to amend to add validity defenses. ACS points out that *Tenneco* rejected an accused infringer's argument that raising invalidity in a pretrial brief substituted for prompt amendment. ACS recites broad language from *Tenneco* such as the Federal Circuit's statement that "[a]t this late date, and after several opportunities foregone by [accused infringer] [the plaintiff's] burden of demonstrating prejudice is light." ACS's Combined Sur-reply at 23:7–10 (quoting *Tenneco*, 752 F.2d at 634).

The failure to amend promptly in *Tenneco* was significantly more egregious than the facts presented in the instant case. First, the amendments in *Tenneco* were proposed five years into the litigation. *Id.* at 634. This is a significantly greater delay than SciMed's filing of the present motion roughly two years into the litigation. Second, a dispute as to the relevance of a deposition question during the Tenneco litigation brought into focus the question of whether validity was at issue in the case. *Id.* at 635. At that time, plaintiff stressed that the accused infringer should amend its pleadings to assert invalidity before the witness would answer the validity related question. *Id.* Despite this disagreement, no amendment was filed for a year. *Id.* Based on this delay, the court concluded that the patentee "may well have assumed that [the accused infringer] had chosen to drop the matter and guided its litigation strategy accordingly." *Id.* Unlike the defendant in *Tenneco*, SciMed did not engage in conduct that would warrant ACS's assumption that SciMed did not intend to pursue these invalidity defenses. For these reasons, this Court finds *Tenneco* distinguishable from the instant case.

The Court concludes that SciMed's proposed amendments are neither futile nor prejudicial to ACS. Consistent with the liberal approach to amendments embodied in Federal Rule of Civil Procedure 15(a), the Court grants SciMed's motion for leave to amend its first amended answer.

### C. *ACS's Counter–Motion for Judgment on the Pleadings*

ACS seeks judgment on the pleadings against SciMed's First, Third, Fourth, Fifth, Sixth and Seventh Defenses in SciMed's first amended complaint. With respect to the First, Fifth, Sixth and Seventh defenses, ACS argues that it is entitled to judgment on the pleadings based on the res judicata and collateral estoppel effects of the stipulated dismissal of prior litigation between ACS and SciMed and the stipulated consent judgment in prior litigation between ACS and Boston Scientific Corporation. ACS seeks judgment on the pleadings against SciMed's Third defense (lack of standing) and Sixth defense (unenforceability based on ACS's fraudulent conduct) on grounds that the Court's May 13, 1996 Order decided these issues against SciMed. Finally, ACS seeks judgment on the pleadings against SciMed's Fourth defense (failure to state a claim) because ACS has alleged the essential elements of patent infringement.

As an initial matter, SciMed argues that ACS's Counter-motion should be denied as untimely. Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Since no trial delay will result from resolution of ACS's motion,[8] the Court considers ACS's motion timely under Rule 12(c).

#### 1. *First, Fifth, Sixth and Seventh Defenses: Preclusion*

ACS argues that it is entitled to judgment on the pleadings as to these four defenses because of the preclusive effects of the 1991 and 1994 settlements and consent judgments. As discussed above, the prior consent judgments do not preclude SciMed from raising invalidity and unenforceability defenses. Accordingly, ACS is not entitled to judgment on the pleadings based on its claim and issue preclusion arguments.

---

**8.** No trial date has been set in this matter; the *Markman* hearing is scheduled for June 1, 1998.

### 2. *Third and Sixth Defenses: Lack of Standing*

In its May 13, 1996 Order, this Court denied SciMed's motion to dismiss ACS's complaint for lack of standing. In so doing, the Court concluded that "ACS is the successor in title to the patent rights and has standing to bring this suit." Order at 13:1–2. SciMed's Third defense, filed after the May 13 Order as part of SciMed's First Amended Answer, asserts that ACS lacks standing to bring suit on the Yock patents.

 The parties dispute whether the assertion in the Court's Order entitles ACS to judgment on the pleadings as to SciMed's standing defense. This Court's determination that ACS had standing must be limited to the context of that decision. "The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether she is entitled to offer evidence in support of her claim." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court's Order did not definitively resolve the issue of standing. Instead, standing is a jurisdictional issue that SciMed can plead as a defense and reassert at a later time if facts surface that suggest a lack of standing.

Although the Court's previous order does not preclude SciMed from raising a lack of standing defense, the effect of the Order is that SciMed bears a considerable burden in prevailing on such a defense. On the record presented to the Court in the context of its previous decision, the Court concluded that ACS had standing to bring this action. SciMed will need to present significant new evidence to convince the Court that ACS lacks standing. Nevertheless, SciMed is not precluded from presenting such evidence by virtue of the Court's May 13, 1996 Order.

 Similarly, the Court's May 13 Order does not preclude SciMed from asserting its Sixth defense. SciMed's Sixth defense asserts that the Yock patents should be held unenforceable because ACS fraudulently stated in its opposition to SciMed's motion to dismiss that ACS owned all substantial rights to the Yock patents. Again, the Court's Order did not resolve whether ACS in its opposition brief made fraudulent statements regarding patent ownership. Accordingly, ACS is not entitled to judgment on the pleadings as to SciMed's Sixth defense simply because of the May 13 Order.

### 3. *Fourth Defense: Failure to State a Claim*

 SciMed's Fourth defense asserts that ACS's amended complaint fails to state a claim upon which relief can be granted. In order to state a claim of patent infringement, a plaintiff must allege that the defendant makes, uses, offers to sell, or sells the patented invention within the United States, during the term of the patent, and without authority of the patent holder. *See* 35 U.S.C. § 271(a). ACS has pled that it has the right to bring suit on the Yock patents at issue and that SciMed has manufactured, used, sold, or distributed catheters infringing one or more claims of the '548, '273, '395, and '233 patents. Second Amended Complaint ¶¶ 18, 23, 28, 33. For the purposes of evaluating the sufficiency of pleadings, all averments must be taken as true and construed in the light most favorable to the pleading party. *Pillsbury, Madison & Sutro v. Lerner,* 31 F.3d 924, 928 (9th Cir.1994). Given that ACS has alleged the essential elements of patent infringement, ACS's has stated a claim for patent infringement. Accordingly, the Court strikes SciMed's Fourth Defense of failure to state a claim.[9]

### D. *SciMed's Counter Motion for Stay Pending Arbitration*

SciMed filed a Counter–Motion for a stay pending arbitration in the event that the Court relied on interpretation of the settlement agreements, which contain arbitration provisions, in ruling that the prior agreements have preclusive effect on the current litigation. Because the Court has concluded that the agreements do not have any preclusive effect, SciMed's counter-motion is moot.

---

**9.** The Court interprets ACS's counter-motion for judgment on the pleadings as to SciMed's Fourth Affirmative Defense as a motion to strike an insufficient defense. *See* Fed.R.Civ.P. 12(f).

## III. CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

(1) SciMed's Motion for Leave to Amend its First Amended Answer is GRANTED. SciMed shall file its Second Amended Answer within ten (10) days of the date of this order.

(2) ACS's Motion for Judgment on the Pleadings against Defendant's First, Third, Fifth, Sixth and Seventh Defenses is DENIED.

(3) ACS's Motion for Judgment on the Pleadings against Defendant's Fourth Defense is interpreted as a Motion to Strike the Fourth Defense and is GRANTED. SciMed's Fourth Defense is hereby STRICKEN.

(4) ACS's Contingent Counter–Motion for a Stay is DENIED as moot.

IT IS SO ORDERED.